UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 15 cr 554 |
| v. | Filed: |
| FRANK A. REICHL, | Violation: 15 U.S.C. § 1 |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

INFORMATION

The United States of America, acting through its attorneys, charges:

1. FRANK A. REICHL ("REICHL") is hereby made a defendant on the charge stated below:

SHERMAN ACT CONSPIRACY
(15 U.S.C. § 1)

RELEVANT PARTIES AND ENTITIES

2. At all times relevant to this Information, Company 1 was a corporation existing under the laws of Delaware, with its principal place of business in Parsippany, New Jersey. Company 1 was a manufacturer and supplier of water treatment and other chemicals, including liquid aluminum sulfate, for use by municipalities and pulp and paper companies in the District of New Jersey and elsewhere.

3. Defendant REICHL is a resident of Flanders, New Jersey. At all times relevant to this Information, REICHL was employed by Company 1. During the period relevant to this

Information, REICHL held positions in which he was responsible for the sale and marketing of water treatment chemicals, including liquid aluminum sulfate, except for the period from approximately July 2005 to approximately December 2006, when he was employed in other components of Company 1 that were not engaged in the sale and marketing of water treatment chemicals.

4. Prior to July 2005, REICHL was General Manager of Water Chemicals. After approximately December 2006 until the termination of his employment with Company 1 in 2010, REICHL was Vice President of Sales and Marketing. As both General Manager and Vice President, REICHL oversaw the sale and marketing of water treatment chemicals, including liquid aluminum sulfate, and was responsible for pricing and strategy, analyzing proposals, determining prices, approving bid and price proposals, and supervising other sales and marketing employees of Company 1.

5. Various other persons and entities, not named as defendants herein, participated as co-conspirators in the offense charged herein and performed acts and made statements in furtherance thereof. Whenever in the Information reference is made to any act, deed, or transaction of any corporation, such allegation shall be deemed to mean that the corporation engaged in such act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

## BACKGROUND

6. Liquid aluminum sulfate is a coagulant used to remove impurities and other substances from water. The principal customers for liquid aluminum sulfate are municipalities, which use it in potable water and wastewater treatment, and pulp and paper manufacturers which

use it in their manufacturing processes.

7. Municipalities usually acquire their supplies of liquid aluminum sulfate through a publicly-advertised competitive bidding process. Municipal contracts for liquid aluminum sulfate are usually one year in duration, although some contracts provide for renewal for a period of time. The results of municipal bidding processes are typically made public.

8. Pulp and paper manufacturers usually acquire their supplies of liquid aluminum sulfate pursuant to requests for price issued to suppliers of liquid aluminum sulfate. The terms of the resulting contracts are subject to negotiation between the suppliers who respond to requests for price and the pulp and paper manufacturers. Contracts for supply of liquid aluminum sulfate to pulp and paper manufacturers may last for a year or more. The results of the negotiations between the liquid aluminum suppliers and the pulp and paper manufacturers are typically not made public.

9. Liquid aluminum sulfate is sold by the ton. Supplies of liquid aluminum sulfate are transported to the customer by rail or truck from the manufacturing plant of the supplier that is closest to the customer. The cost of freight is a significant component of the price of liquid aluminum sulfate charged to municipal customers and pulp and paper manufacturers.

10. One factor suppliers of liquid aluminum sulfate consider in deciding whether to bid or quote on a contract is whether the business is "freight logical," that is, whether the liquid aluminum sulfate supplier can make a profit on the business taking into account the distance from the supplier's plant to the customer and the corresponding cost of freight.

DESCRIPTION OF THE OFFENSE

11. From at least as early as 1997 and continuing until approximately July 2010, the exact dates being unknown to the United States, in the District of New Jersey and elsewhere,

3

REICHL and his co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition in the sale and marketing of liquid aluminum sulfate by agreeing to rig bids and allocate customers for, and to fix, stabilize, and maintain the price of liquid aluminum sulfate sold to municipalities and pulp and paper companies in the United States. The combination and conspiracy engaged in by REICHL and his co-conspirators was in unreasonable restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

12. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among REICHL and his co-conspirators, the substantial terms of which were to rig bids and allocate customers for, and to fix, stabilize, and maintain the price of liquid aluminum sulfate sold to municipalities and pulp and paper companies in the United States.

## MEANS AND METHODS OF THE CONSPIRACY

13. For the purpose of forming and carrying out the charged combination and conspiracy, REICHL and his co-conspirators did those things that they combined and conspired to do, including, among other things:

   a. participating in meetings and conversations in the District of New Jersey and elsewhere to discuss each other's liquid aluminum sulfate business;

   b. agreeing to "stay away" from each other's "historical" customers by not pursuing the business of those customers;

   c. tracking bid and pricing histories to determine which accounts were the "historical" customers of each co-conspirator or other supplier of liquid aluminum sulfate, so as to determine whether to pursue a particular contract or to submit an intentionally losing or

"throw away" bid or price quotation;

    d. submitting intentionally losing or "throw away" bids or price quotations to each other's "historic" liquid aluminum sulfate customers;

    e. from time to time, in the District of New Jersey and elsewhere, discussing the price to be quoted to a customer by the intended winner to determine the amount of the intended loser's intentionally losing or "throw away" bid or price quotation;

    f. from time to time, upon request of a co-conspirator, withdrawing inadvertently winning bids submitted to co-conspirators' "historical" customers;

    g. where a co-conspirator could not withdraw its inadvertently winning bid, bidding to lose on one of its own customers to compensate for the loss of that "historical" customer; and

    h. instructing new employees as to how to determine whether and how to bid on or quote a price for the business of liquid aluminum sulfate customers so as to comport with the agreement not to compete between the defendant and co-conspirators.

## TRADE AND COMMERCE

14. At all times relevant to this Information, the activities of REICHL, his co-conspirators, and Company 1 with respect to the sale and marketing of liquid aluminum sulfate

that are the subject of this Information were within the flow of, and substantially affected, interstate trade and commerce.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

_____
WILLIAM J. BAER
Assistant Attorney General
Antitrust Division
U.S. Department of Justice

_____
BRENT SNYDER
Deputy Assistant Attorney General
Antitrust Division
U.S. Department of Justice

_____
MARVIN N. PRICE, JR.
Director of Criminal Enforcement
Antitrust Division
U.S. Department of Justice

_____
JEFFREY D. MARTINO, Chief
STEPHEN J. McCAHEY, Assistant Chief
New York Office
Antitrust Division
U.S. Department of Justice

_____
PATRICIA L. JANNACO
MARY ANNE F. CARNIVAL
FRANK A. CAVANAGH
Trial Attorneys, New York Office
Antitrust Division
U.S. Department of Justice
26 Federal Plaza, Suite 3630
New York, New York 10278
Tel:   (212) 335-8034
Fax:   (212) 335-8023
Email: patricia.jannaco@usdoj.gov

Dated: September 29, 2015

6

CASE NUMBER:

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

Frank A. Reichl

**INFORMATION FOR**

**WILLIAM BAER**
*ASSISTANT ATTORNEY GENERAL*
*ANTITRUST DIVISION*

PATRICIA L. JANNACO
*TRIAL ATTORNEY*
*212-335-8034*